Alta Cooperative Elevator, A Corporation v. Commissioner. *
Alta Cooperative Elevator v. Commissioner
Docket No. 65043.
United States Tax Court
T.C. Memo 1959-102; 1959 Tax Ct. Memo LEXIS 149; 18 T.C.M. (CCH) 453; T.C.M. (RIA) 59102; May 19, 1959
*149 Determination made as to the right of petitioner, a non-tax-exempt farmers' cooperative association, to exclude from its gross income as part of the patronage dividends certain amounts allocated for the benefit of its members only, out of compensation received from the Commodity Credit Corporation (a government agency which was not a member of the petitioner cooperative) for handling and storing grain owned by such agency. Pomeroy Cooperative Grain Co., 31 T.C. 674, followed. James M. Stewart, Esq., Central National Building, Des Moines, Ia., and Rolland E. Grefe, Esq., for the petitioner. Ivan L. Onnen, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Memorandum Findings of of Fact and Opinion (T.C. Memo. 1959-33) were filed herein *150 on February 25, 1959. Thereafter, on March 24, 1959, respondent filed a motion to extend to April 24, 1959, the time within which to file a motion for reconsideration pursuant to Rule 19(e) of this Court's Rules of Practice. In support of said motion, respondent stated that a question of policy had arisen with respect to the position theretofore taken by him, on the issue relating to the deductibility by the petitioner of Iowa income taxes and local property taxes; and that the additional time requested was necessary, in order to enable respondent to reexamine his position and determine whether he would file a motion for reconsideration. This motion for extension of time was granted by the Court on March 25, 1959. Subsequently, on April 24, 1959, respondent filed a motion for reconsideration of the Court's above-mentioned Memorandum Findings of Fact and Opinion of February 25, 1959. In this motion, respondent states: That, after the Court's Opinion was filed as aforesaid, respondent reexamined his position and "now concedes that taxpayer is entitled to deduct in 1954 the Iowa income tax and the local property tax paid in 1954 as well as the taxes accrued in 1954"; that "respondent *151 further concedes that petitioner is entitled to deduct in 1953 the Iowa income tax and the local property tax paid in that year"; and that respondent moves the Court to vacate its Memorandum Findings of Fact and Opinion heretofore filed herein, and to substitute in lieu thereof revised Memorandum Findings of Fact and Opinion, which would give effect to respondent's concession of the issue pertaining to said local taxes. Affixed to said motion for reconsideration is a statement by counsel for petitioner, that he has no objection to the same. By reason of the foregoing, the original report in this case, which was filed on February 25, 1959, has been vacated under Order dated May 15, 1959; and, in lieu thereof, the present Memorandum Findings of Fact and Opinion now become those of the Court. The respondent determined deficiencies in petitioner's income taxes as follows: Year
Deficiency
1953
$1,615.89
1954
4,894.10
1955
2,410.25
The sole issue remaining for decision is: Whether the petitioner, a non-tax-exempt farmers' cooperative association, is entitled to exclude from its gross income, as part of its patronage dividends (designated on its returns as "Patronage *152 Refunds"), amounts allocated for credit and subsequent distribution to its members only, out of compensation received by petitioner from the Commodity Credit Corporation (a government agency which was not a member of the cooperative), for handling and storing grain which producers of such grain (including both members and nonmembers of the cooperative) had surrendered to such government agency at petitioner's elevator, in satisfaction of government crop loans. All other issues raised in the pleadings were abandoned by the parties either at or subsequent to the trial. Findings of Fact Some of the facts were stipulated; and it was stipulated also that certain exhibits and all oral testimony relating thereto, previously received in evidence in the case of Pomeroy Cooperative Grain Co., 31 T.C. 674, are incorporated herein and may be considered by this Court in making the findings of fact and rendering its opinion on the issue in the instant case. The stipulation, together with all exhibits identified therein, is incorporated herein by reference. The petitioner, Alta Cooperative Elevator, is an Iowa corporation which has its principal place of business at Alta, Iowa. *153 During all the taxable years, it qualified and was operated as a farmers' "cooperative association" under Chapter 499 of the Codes of Iowa, 1950 and 1954. It did not qualify (which it has conceded) as a tax-exempt cooperative, under section 101(12) of the Internal Revenue Code of 1939 or under section 521 of the Internal Revenue Code of 1954. Its returns for all the taxable years were filed with the district director of internal revenue for the district of Iowa. Petitioner is a purchasing and marketing cooperative, dealing in grain and farm supplies. These business activities were carried on through two departments, known respectively as the Grain Department and Merchandise Department. Its activities in connection with the marketing of grain purchased from its patrons, and also those in connection with the handling and storing of grain for the Commodity Credit Corporation (here directly involved), were carried on through its Grain Department. Each of said departments transacted business with nonmembers, as well as with members, of the petitioner cooperative. During each of the years involved, petitioner purchased grain at its elevator from the producers thereof *154 (including both members and nonmembers of the cooperative). If the seller was a member of the cooperative, he was given credit on petitioner's patronage ledger for the number of bushels which he sold. Title to all grain so purchased, passed to petitioner at the time of its delivery at petitioner's elevator; and such grain was then included by petitioner in its inventory. The seller was paid the current market price for the grain. Thereafter, petitioner sold such grain either on the terminal markets or elsewhere, in such manner as it believed would yield it the greatest profit. The amounts of grain so purchased by petitioner from producers during the taxable years were as follows: Bushels
Bushels
Purchased
Purchased
Total
from
from
Bushels
Year
Members
Nonmembers
Purchased
1953
233,872
52,438
287,310
1954
181,775
119,121
300,896
1955
199,265
141,674
340,939
The gross profits realized by petitioner from the sale of grain so purchased were included by petitioner in the so-called "gross savings and income" (representing, in substance, gross profits per books) of its Grain Department, for the purpose of computing patronage dividends. *155 During each of the taxable years, petitioner also received at its elevator, certain other grain which producers thereof voluntarily surrendered to the Commodity Credit Corporation (a government agency, hereinafter called the "C.C.C."), in satisfaction of government crop loans made to such producers by said agency. Grain so surrendered is hereinafter called "Government grain." The deliveries of such grain at the elevator were made pursuant to written instructions issued to the producers by the county committee which, acting as local representative of the C.C.C., had approved the loans on behalf of said agency. If the delivering producer was a member of the cooperative, he was given credit on petitioner's patronage ledger for the number of bushels delivered. Thereafter, in accordance with written instructions issued by the county committee, petitioner either shipped out the grain at once to a point designated by the committee, or stored it in its elevator, or placed it in government-owned storage bins situated in the locality. If the grain was stored in petitioner's elevator, the handling and storing were done pursuant to a Uniform Grain Storage Agreement between petitioner (as a warehouseman) *156 and the C.C.C., which fixed the amounts of the compensation to be paid to petitioner by the C.C.C. for such services; and a warehouse receipt for the grain was issued by petitioner for the C.C.C. If, on the other hand, the grain was stored by petitioner in government-owned bins, this was done in accordance with a contract between petitioner and the particular county committee, which fixed the amount of the compensation to be paid to petitioner for its services in loading and unloading the grain into and out of such bins. Title to all Government grain delivered to petitioner by producers in satisfaction of government crop loans, passed to the C.C.C. at the time of its delivery at petitioner's elevator. Petitioner at no time owned any of this Government grain; it at no time included any of the same in its inventory; and it did not market any of such grain on behalf of anyone. The number of bushels of Government grain delivered to petitioner in each of the taxable years 1954 and 1955 [1] was: Bushels
Bushels
Total
Delivered
Delivered by
Bushels
Year
by Members
Nonmembers
Delivered
1954
132,990
40,537
173,527
1955
79,524
57,219
136,743
*157 The amounts of compensation received by petitioner from the C.C.C. during the taxable years, for handling and storing Government grain were: $37,916.31 for the taxable year 1953; $26,538.07 for the taxable year 1954; and $30,177.56 for the taxable year 1955. All the above amounts of compensation received for handling and storing Government grain were included by petitioner in the "gross savings and income" of its Grain Department, for the purpose of computing patronage dividends. During the taxable years, petitioner allocated portions of these amounts as patronage dividends, for the benefit of its members only; and it excluded the amounts so allocated from gross income on its Federal income tax returns, by adding the same to its cost of goods purchased. Neither the C.C.C. nor any county committee acting on behalf of such agency was a member of the petitioner cooperative association. The respondent, in his notice of deficiency, determined that petitioner was not entitled to exclude from its gross income, as part of its patronage dividends, any of the amounts allocated for the benefit of its members only, out of compensation received from the C.C.C. for handling and storing grain *158 owned by such agency. Opinion The issue here presented is identical with the first issue presented in the case of Pomeroy Cooperative Grain Co., 31 T.C. 674. Both cases were tried on the same trial calendar; and the facts of each, relative to the common issue, are substantially the same. At the trial herein, counsel for the petitioner and the respondent agreed that the holding made by this Court on the first issue in the Pomeroy case, should control the decision of the issue in the instant case. Accordingly we here hold, consistent with the holding heretofore made by us in the Pomeroy case, that amounts allocated by petitioner as patronage dividends for the benefit of its members only, out of compensation received from the C.C.C. for handling and storing Government grain, do not qualify as true patronage dividends; and that the same are not excludible from petitioner's gross income. Decision will be entered under Rule 50. Footnotes
*. These Memorandum Findings of Fact and Opinion supersede T.C. Memo. 1959-33, filed February 25, 1959, which were vacated under Order dated May 15, 1959.↩
1. The record herein does not disclose the number of bushels of grain delivered to petitioner in the taxable year 1953.↩